IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DONAL RAY EDWARDS, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | CIVIL ACTION NO. 22-387-KD-MU |
| ) | |
| ESCAMBIA COUNTY SHERIFF ) | |
| DEPARTMENT, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## **REPORT AND RECOMMENDATION**

Plaintiff Donal Ray Edwards, proceeding without counsel, filed a complaint under 42 U.S.C. § 1983 while incarcerated as a pretrial detainee at the Escambia County Jail. This action has been referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(R). This matter is before the Court on Defendants' motion for summary judgment.[1] (Doc. 34). For the reasons discussed herein, it is recommended that this motion be **GRANTED**.

### **I. Background and Factual Allegations**[2]

**A.    Complaint (Doc. 17).**

Plaintiff Edwards is suing Defendants Heath Jackson, Sheriff of Escambia County, and Richard Hetrick, Warden of the Escambia County Jail, for failing to keep

---

[1] The Court converted the Answer and Special Report filed by Defendants Sheriff Heath Jackson and Warden Richard Hetrick to a motion for summary judgment. (Docs. 30, 33).

[2] The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." *Priester v. City of Riveria Beach*, 208 F.3d 919, 925 n.3 (11th Cir. 2000).

him safe after he was attacked by inmates while incarcerated at Escambia County Jail (or "the jail").

Edwards alleges that on June 27, 2022, while housed in Dorm or Unit 3 of the jail, he was "jumped by [a] gang." (Doc. 17 at 4). He claims he was stomped in the head and back and had to fight for his life. Following the attack, he suffered a broken hand and received treatment in the emergency room of a local hospital and, thereafter, at Bayside Orthopaedic. He asserts generally that the jail is unsafe due to the shortage of staff, for which Defendants are responsible, and supports his claim with the allegation that there was a gang fight on April 21, 2022[3] and two deaths in "past two months" (expounding that the bodies "lay so long rig[or] mor[t]is set in"). (*Id.*).

Edwards seeks monetary relief for his pain and suffering and requests that the Court "make jail safe for others." (*Id.* at 7).

**B.     Defendants' Answer and Special Reports (Docs. 30, 33).**

Defendants Jackson and Hetrick have answered the suit and denied the allegations asserted against them. (Docs. 30, 33). Defendants maintain there was no indication or knowledge that Edwards would be attacked on June 27, 2022, nor that any attack was imminent. Defendants maintain that the jail has in place mechanisms to deter violence at the jail, including roving patrols of correctional officers, video surveillance of common areas, and a use of force procedure when a fight or altercation does occur. (Doc. 30 at 5). Defendants further maintain that following the June 27, 2022, attack Warden Hetrick took immediate steps to investigate it, including an

---

[3] The Court is unable to clearly read the date plead in the complaint. However, the Court notes that the exact date is irrelevant to the current determination of summary judgment.

interview with Edwards and review of video surveillance from Housing Unit 3. Edwards also received immediate medical attention and follow up treatment for his injury.

Defendants have submitted personal affidavits in response to the allegations asserted against them, which are summarized as follows:

Richard Hetrick and Heath Jackson declare that jail correctional officers are on continuous patrol, there is video surveillance capable of being monitored, correctional officers maintain communications with each other by radio, and correctional officers carry pepper spray and tasers that can be used and deployed when necessary to maintain jail order and control. Defendants affirm that Edwards's attack was not caught on video surveillance, but occurred outside the view of the camera when guards were not around. When Edwards was questioned about the identity of his attackers, Edwards declined to name any individuals and responded that he would "take care of it on his own." Without a statement by Edwards regarding the identity of his attackers, further investigation was impossible. Sheriff Jackson further affirms that he nor any other officer had warning of the June 27, 2022, attack before it occurred. The first notice of the assault was when Edwards sought medical care, which was promptly provided. (Docs. 30-1; 30-2).

Non-parties, Melissa Floyd, a lieutenant at the Escambia County Jail, Prince Salter, a sergeant at the Escambia County Jail, and Chris Purvis, who was employed by the Escambia County Jail on June 27, 2022, but has since retired, reaffirm the violence prevention and protection measures in place as stated by Defendants. They further affirm that these practices were in place on June 27, 2022. They affirm that Edwards, who has been a regular inmate at the jail, had no prior incidents of violence directed

3

towards him by any person or group that would lead correctional officers to believe he would be the subject of any assault. Nor was there actionable intelligence on June 27, 2022, indicating that he could or would be attacked. (Docs. 30-3; 30-4; 33).

Defendants have also submitted the medical records of Edwards which confirm that he received immediate medical treatment following the June 27, 2022, attack from the nursing staff at the jail, where he was assessed with a gash on his chin and an extremely swollen right hand with cold fingers. (Doc. 30-6 at 2). Thereafter, he was sent to the emergency room at a local hospital, where he presented with bruising and swelling to his right eye and cheek and to both hands, cuts to his lip and below his lip, and neck pain that went down his spine. (*Id*. at 8). Edwards was diagnosed with a broken right hand. (*Id*. at 10, 13). Thereafter, Edwards was treated at Bayside Orthopaedic Sports Medicine & Rehab Center. (*Id*. at 18-20).

### C. Plaintiff's Response to Motion for Summary Judgment (Doc. 35).

In response to Defendants' motion for summary judgment, Edwards alleges that he suffered injury due to the unsafe living conditions and poor management of the jail by the defendants. Specifically, Edwards claims that the gang that attacked him was "long over[due] to be split up," that the jail is understaffed, and that there are only 2 or 3 guards. He encouraged the Court to review payroll records and video footage from the jail. He further describes continued pain in his hand, cramping, and "nerves locking up." (Doc. 35 at 1).

## II. <u>Summary Judgment Standard</u>

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of

4

law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986) ("[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."); *Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (11th Cir. 2009) ("[S]ummary judgment is appropriate even if 'some alleged factual dispute' between the parties remains, so long as there is 'no genuine issue of material fact.'") (emphasis in original) (citation omitted).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing or pointing out to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id*. at 322-24.

"When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593–94 (11th Cir. 1995) (per curiam) (quoting *Celotex*, 477 U.S. at 324). "To defeat a motion for summary judgment, the nonmoving party may not rely on 'mere allegations.' It must raise 'significant probative evidence' that would be sufficient for a jury to find for that

5

party." *LaChance v. Duffy's Draft House, Inc.*, 146 F.3d 832, 835 (11th Cir. 1998) (citations omitted). In other words, there is no genuine issue for trial where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party[.]" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In considering whether the moving party is entitled to summary judgment, the court must view the facts in the light most favorable to the non-movant. *See Comer v. City of Palm Bay, Fla.*, 265 F.3d 1186, 1192 (11th Cir. 2001) (per curiam) ("We view the evidence and all factual inferences raised by it in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in favor of the non-moving party."). The requirement to view the facts in favor of the nonmoving party extends only to "genuine" disputes over material facts. *Garczynski*, 573 F.3d at 1165. "A genuine dispute requires more than 'some metaphysical doubt as to material facts.'" *Id*. (citations omitted). A "mere scintilla" of evidence is insufficient; the nonmoving party must produce substantial evidence to defeat a motion for summary judgment. *Id*.

### III. <u>Discussion and Analysis</u>

Under the Eighth Amendment, prison officials have a duty to "ensure reasonable safety" of inmates, "a standard that incorporates due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions." *Farmer v. Brennan*, 511 U.S. 825, 844-45 (1994). However, "a prison custodian is not the guarantor of a prisoner's safety," *Purcell ex rel. Morgan v. Toombs Cnty.*, 400 F.3d 1313, 1321 (11th Cir. 2005) (citation omitted), and "[i]t is not[] every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834. There is no liability

for "an official's failure to alleviate a significant risk that he should have perceived but did not. . . ." *Farmer*, 511 U.S. at 838. It is a defendant's deliberate indifference to a known, significant risk that violates the Eighth Amendment. *Lane v. Philbin*, 835 F. 3d 1302 (11th Cir. 2016). To survive summary judgment on a failure-to-protect claim, a plaintiff must "produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003) (per curiam) (quotation omitted).

The first element — a substantial risk of serious harm — is measured against an objective standard. *Caldwell*, 748 F.3d at 1099. Under this standard, the alleged condition must be "so extreme that it poses an unreasonable risk of serious damage to the prisoner's health or safety." *Richardson v. Johnson*, 598 F.3d 734, 737 (11th Cir. 2010) (per curiam).

The second element — the prison official's deliberate indifference to the risk — "has both a subjective and an objective component." *Marbury v. Warden,* 936 F3d 1227, 1233 (11th Cir. 2019). "To satisfy the subjective component, a plaintiff must produce evidence that the defendant 'actually (subjectively) knew that an inmate faced a substantial risk of serious harm.'" *Caldwell*, 748 F.3d at 1099 (citation and alterations omitted). The defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. To meet the objective component, a plaintiff must produce evidence that the defendant disregarded the known substantial risk by failing to respond to it in an objectively reasonable manner. *Caldwell*, 748 F.3d at 1099. "The known risk of injury must be 'a strong likelihood, rather than a mere possibility' before a

7

[prison official's] failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (per curiam) (citations omitted). Thus, "[m]erely negligent failure to protect an inmate from attack does not justify liability under section 1983[.]" *Id*. Where more than one defendant is alleged to have been deliberately indifferent, "[e]ach individual Defendant must be judged separately and on the basis of what that person knows." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008).

The third element — causation — requires a plaintiff to demonstrate a link between a defendant's act or omission and the excessive risk of harm, and a link between the risk of harm and the plaintiff's injury. *LaMarca v. Turner*, 995 F.2d 1526, 1538-39 (11th Cir. 1993).

Edwards claims Defendants failed to take reasonable measures to ensure his safety, while having knowledge of the dangerous conditions at the Escambia County Jail. Stated another way, Edwards is alleging that he faced a generalized substantial risk of serious harm from inmate violence at the jail, of which Defendants were aware, and they ignored the risk. The Eleventh Circuit has declared many times over that a claim of deliberate indifference based on a generalized risk of violence may only be established by showing "that serious inmate-on-inmate violence was the norm or something close to it[,]" which may be evidenced by "pervasive staffing and logistical issues rendering prison officials unable to address near-constant violence, tensions between different subsets of a prison population, and unique risks posed by individual prisoners or groups of prisoners due to characteristics like mental illness." *Marbury*, 936 F.3d at 1234-35 (internal quotation marks and citations omitted).

In *Hale v. Tallapoosa County*, 50 F.3d 1579 (11th Cir. 1995), the Eleventh Circuit determined that the plaintiff had presented sufficient evidence of a generalized, substantial risk of serious harm from inmate violence to survive summary judgment where the record showed that prisoners were not segregated based on their proclivity for violence; there was only one jailer on duty; the jailer's quarters were out of earshot and eyesight of the prisoners' cell; and fights occurred between inmates on a regular basis resulting in injuries requiring medical attention and hospitalization. *Id*. at 1581-84.

In *Marsh v. Butler County, Ala*., 268 F.3d 1014 (11th Cir. 2001) (en banc), the Eleventh Circuit held that the former inmate plaintiffs had sufficiently alleged conditions posing a substantial risk of serious harm to inmates when they alleged: 1) there was no segregation of nonviolent inmates from violent inmates, pretrial detainees from convicted criminals, juveniles from adults, or inmates with mental disorders from those without mental disorders, 2) at times the Jail housed more prisoners than the cells could accommodate, 3) the Jail was routinely understaffed, 4) no head counts of prisoners were made to make sure they were all accounted for, 5) locks on cell doors were not functional, allowing inmates to roam freely at all hours of the day, 6) homemade weapons were readily available by fashioning weapons from material torn from the dilapidated structure of the Jail, 7) no lock down of prisoners in their cells occurred at any point during the day or night, 8) cells were not visually inspected, 9) no jailer was assigned to maintain prisoners' security on the second floor where most of the inmates were housed, 10) the Jail was not operated in accordance with written policies, 11) inmates were not screened for mental health, medical conditions or conflicts with other prisoners before entering the Jail, and 12) prisoners were not disciplined or segregated

when they attempted to escape, threatened jailers, destroyed property or assaulted other inmates. *Id*. at 1029. The Court reasoned that, ***"[t]aken as a whole***, these alleged conditions, if true, present an objectively substantial risk of serious harm—including the risk of inmate-on-inmate attacks—to inmates. This risk violates the Eighth Amendment's requirement 'that inmates be furnished with the basic human needs, one of which is "reasonable safety."'" *Id*. (quoting *Helling v. McKinney*, 509 U.S. 25, 33 (1993)) (emphasis added).

The Eleventh Circuit has specified that *Hale* and *Marsh* are not the "proverbial 'floor' of liability for Eighth Amendment purposes" but that the conditions evidenced by the records must be "sufficiently grave to violate the Constitution." *Purcell*, 400 F.3d at 1323. "Whether a substantial risk of serious harm exists so that the Eighth Amendment might be violated involves a legal rule that takes form through its application to facts." *Id*. at 1320. The cases below evidence facts courts have considered insufficient to establish that prison conditions "rose to the level of a 'substantial' or 'sufficiently serious' risk as opposed to some lesser risk of harm[,]" given that "[i]n the jail setting, a risk of harm to some degree always exists by the nature of its being a jail." *See id*. at 1323 (citation omitted).

In *Purcell*, the Court determined that the record did not support the plaintiff's contention that jail conditions posed the substantial risk of serious harm necessary for a constitutional violation where the inmates were segregated based on a number of particularized factors (including the type of crime committed and potential personal conflicts with others); the jail was properly staffed (with the typical number of five officers being on duty during the night of the subject attack); officials had a history of

10

addressing and punishing inmate violence; the fights that occurred were not linked to any recurring specific cause; and the guards testified they periodically walked the cellblock. *Id*. at 1321-23.

In *Harrison v. Culliver*, 746 F.3d 1288 (11th Cir. 2014), the plaintiff adduced evidence of thirty-three incidents of inmate-on-inmate violence involving weapons over the span of three-and-a-half years, four of which occurred in the same hallway where the plaintiff was assaulted, in a prison which housed between 830 and 990 inmates. *Id*. at 1299-1300. The Court concluded that the evidence presented was "hardly sufficient to demonstrate that [the facility] was a prison 'where violence and terror reign.'" *Id*. at 1300 (citation omitted).

In *Lorenzo v. Williams*, 2018 WL 3863529 (S.D. Ga. July 30, 2018), there was evidence that the prison had an average of six inmate-on-inmate assaults per month in a population of 1500-1600 in the year the decedent was attacked. *Id*. at *7. The district court concluded "that these superficial statistics [were] insufficient to demonstrate a substantial risk of serious harm to inmates at [the prison]." *Id*.

In *Marbury*, the plaintiff affirmed that he had personally witnessed fifteen apparently gang-related inmate stabbings prior to the incident in which he was stabbed, had sent a written request to the warden asking to be moved to another dorm (he described his dorm as an "over-rated gang affiliated block"), and had made several more in-person requests to be transferred. 936 F.3d at 1231. The Eleventh Circuit panel majority found the evidence insufficient to establish deliberate indifference based on a general risk of inmate-on-inmate violence. *Id*. at 1235. The panel majority expounded that in cases where the Eleventh Circuit had previously "held that a generalized risk of

violence from a prison population could support a claim of deliberate indifference to a substantial risk of serious harm, the plaintiff has pointed to specific features of a facility or its population rendering it particularly violent." *Id*. The panel majority stated that although the record showed that inmates faced some risk of assaults by fellow prisoners, the plaintiff had failed to identify "specific features of the prison that would make it particularly violent." *Id*.; *but cf., Dickinson v. Cochran*, 833 F. App'x 268, 275 (11th Cir. 2020) (per curiam) (finding that plaintiff sufficiently alleged "specific feature of the jail that render[ed] it particularly violent" where the plaintiff "alleged overcrowding, failure to identify and segregate violent inmates, failure to properly search inmates, failure to limit contraband, and failure to adequately supervise inmates").

Here, there is no dispute that Edwards was attacked and injured on July 27, 2022. Furthermore, the Court takes as true Edwards's allegations that another gang attack occurred in April 2022, three months before his attack, and that two inmates have died recently at the jail. Such allegations, however, fall short of establishing that Edwards faced an objectively serious risk of harm and that Defendants were deliberately indifferent to the risk. Instead, Edwards's allegations are generalized, lacking context, or any specific details necessary to allow the Court to reasonably conclude that violence is the norm at Escambia County Jail. *See Marbury*, 936 F.3d at 1235. Notably, Edwards fails to allege the nature of any of the referenced incidents at the jail or elaborate on any particularized concerns or problems regarding Dorm or Unit 3, beyond stating there was a gang housed in the dorm that should have been split up. While Edwards identifies one other attack that has occurred in the housing unit by a gang, he utterly fails to provide any facts related to the incident. Edwards also fails to

identify any specific features of the jail, Dorm 3, or its population that make the jail particularly violent. For instance, there is no information that the gang targeted certain populations of inmates or that the attacks always happened in certain areas or at certain times. Although Edwards's allegations show that there was some risk of inmate-on-inmate violence at the jail, he has not produced evidence "that he was in an environment so beset by violence that confinement, by its nature, threatened him with the substantial risk of serious harm." *See id*. Indeed, Edwards has presented far less evidence about the level of violence at Escambia County Jail and, in particular, Dorm or Unit 3, than the evidence presented in both *Harrison* and *Marbury*, which the Eleventh Circuit found insufficient to show that inmate-on-inmate violence was so pervasive that it amounted to the substantial risk of serious harm necessary to support a deliberate indifference claim. Edwards's allegations establish a mere possibility of injury, but they fail to carry his burden of establishing the strong likelihood of injury. *See Brown*, 894 F.2d at 1537.

Furthermore, Edwards does not dispute Defendants' testimony that they have correctional officers continuously patrol the jail, that the officers are armed to ensure order and control in the jail, and that video surveillance is in place at the jail. These policies reflect reasonable measures to combat the generalized risk of violence. *See Brooks v. Warden*, 800 F.3d 1295, 1301 (11th Cir. 2015) (discussing that a "mere possibility" of harm is not enough to state an Eighth Amendment claim and that "the plaintiff must plausibly allege a strong likelihood of serious harm"). Edwards's sparse and generalized allegations simply do not demonstrate a level of violence necessary to

show an objectively substantial risk of serious harm or Defendants' deliberate indifference to such risk, as required by this circuit's case law.

Simply stated, Edwards has failed to show he was at a substantial risk of serious harm or that Defendants knew of any risk of harm directed toward him. Plaintiff Edwards, therefore, has failed to meet his burden of proof.

## IV. Conclusion

For these reasons, it is recommended that summary judgment be **GRANTED** in favor of the Defendants, and this action be dismissed.

The instructions that follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. Gen LR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object.  In the absence of a proper objection, however, the court may review on appeal for plain error if

necessary in the interests of justice." 11th Cir. R. 3-1. To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

    DONE this 23rd day of January, 2024.

                                         s/P. Bradley Murray
                                         UNITED STATES MAGISTRATE JUDGE